# IN THE COURT OF APPEALS OF IOWA

No. 23-1167
Filed October 16, 2024

**KENNETH LEROY ADAMS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____


    Appeal from the Iowa District Court for Cerro Gordo County,
Colleen Weiland, Judge.


    Kenneth Adams appeals the denial of his second application for
postconviction relief.  **AFFIRMED.**


    Karmen Anderson, Des Moines, for appellant.

    Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney
General, for appellee State.


    Considered by Tabor, P.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

Before us is Kenneth Adams's appeal from the denial of his second application for postconviction relief (PCR).

A jury previously found Adams guilty of child endangerment resulting in death after his son died while in his care. On direct appeal, we summarized the facts giving rise to Adams's conviction as follows:

> The child was nineteen months old at the time of his death. According to his mother, he had recently been treated for an ear infection, was experiencing some congestion, and was a little fussy on the night before his death but was otherwise a big, healthy, and generally happy child.
>
> On the day of the child's death, his mother removed him from his crib shortly before 10:00 A.M., proceeded with the family's usual weekend breakfast routine, and left to run errands with her daughter. Adams stayed home with the child and his older brother.
>
> In a recorded interview, Adams told law enforcement officers the child got upset when his mother left, threw a tantrum, and "bashed [him] in the face." Adams was angered by the child's action. He told the child not to do that and instructed him to lie down. Adams threw a pillow on the couch, grabbed the child's pants and "flipped him up" onto the couch, placing him face down on the pillow. He held the child's arm and stroked his back until the child's breathing slowed down. At that point, Adams "turned [the child's] face slightly so that his face was sitting out" because he was concerned about sudden infant death syndrome. He played video games with his older son, cleaned the upstairs bathroom, and returned to play videogames, before noticing something was wrong with the child.
>
> Adams called 911 on a recorded line. He informed the dispatcher his son was not breathing and his eyes were glassy.
>
> Law enforcement officers and paramedics arrived at the scene and attempted life-saving procedures, to no avail. According to one officer, the child "was limp, and his face was blue."

*State v. Adams*, No. 13-1852, 2015 WL 799542, at *1 (Iowa Ct. App. Feb. 25, 2015) (alterations in original). At the ensuing trial,

> The State medical examiner testified the cause of the child's death was suffocation. He noticed bruises on the child, most prominently behind the right ear. In his view, the bruise could have been caused by a finger being pressed on the scalp. He also

observed "11 different discrete areas of hemorrhage or bleeding into [ ] fatty tissue just underneath the scalp," as well as contusions on the child's legs. He testified the bruises would have been caused by "blunt force type trauma." He further explained the child's brain had "hypoxic neuronal changes," which were consistent with death by suffocation. He ruled the manner of death a homicide based on Adams's admission to holding the child's arm. The medical examiner eliminated other reasonable causes of death, including choking on vomit, trauma from the child's "head butt" of his father, ear infection or cold, and sudden infant death syndrome.

*Id.* at *2 (footnote omitted) (alteration in original). On direct appeal, this court affirmed Adams's conviction[1] and preserved his ineffective-assistance claims for PCR.

In Adams's first PCR application, he claimed trial counsel was ineffective in a number of respects, including for failing to challenge the admissibility of the medical examiner's testimony. The district court dismissed Adams's first PCR application, from which he appealed, and this court affirmed. *See Adams v. State*, No. 20-0807, 2021 WL 2709487, at *6 (Iowa Ct. App. June 30, 2021).

Adams then filed this second PCR action claiming his first PCR counsel was ineffective for failing to properly argue his trial counsel and appellate counsel on direct appeal were ineffective for failing to challenge the admissibility of a medical examiner's testimony regarding the child's cause of death. The State requested the PCR court both to reject Adams's claim on the merits and find it time-barred

---

[1] Because the district court applied the incorrect standard when ruling on Adams's motion for new trial, this court conditionally affirmed and remanded for application of the correct standard to Adams's motion for new trial. Following remand and application of the correct standard, the district court denied Adams's motion.

under Iowa Code section 822.3 (2021). The PCR court only addressed the merits of Adams's claim and dismissed Adams's application. Adams appeals.[2]

Because ineffective-assistance-of-counsel claims raise a constitutional issue, our review is de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). With de novo review, we give weight to the district court's fact findings, especially relating to witness credibility, but we are not bound by them. *Id.*

To establish an ineffective-assistance-of-counsel claim, the applicant must (1) establish by a preponderance of the evidence that counsel failed to perform an essential duty and (2) that the failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

Adams contends that his trial and direct appellate counsel were ineffective for failing to anticipate the supreme court's ruling in *State v. Tyler*, 867 N.W.2d 136, 163–65 (Iowa 2015), and argue that the medical examiner's testimony was inadmissible because the cause of death determination was based solely on Adams's statements to investigators. And Adams contends that his first PCR counsel was ineffective for failing to make these ineffective-assistance-of-counsel

---

[2] The State asks us to affirm the PCR court's dismissal on alternative grounds, namely by declaring Adam's application time-barred under section 822.3. *See Jones v. State,* 938 N.W.2d 1, 2 (Iowa 2020) (recognizing we may affirm on any ground raised below and argued on appeal, even when "the court below did not reach that issue."). We decline to accept the State's invitation to resolve Adams's appeal on alternative grounds because the district court did not address the constitutional challenges Adams brought to section 822.3 below.

arguments against his trial and direct appellate counsel. But Adams's claim is faulty at its core because *Tyler* is inapplicable.

In *Tyler*, our supreme court determined a medical examiner's opinions on the cause and manner of death were inadmissible because those opinions on the "[the decedent]'s death were based primarily, if not exclusively, on [the defendant]'s inconsistent and uncorroborated statements to police." 867 N.W.2d at 165. Here, the medical examiner did not primarily rely on inconsistent and uncorroborated statements from Adams to determine the cause of death.

As the State points out, Adams's statements about what happened were not inconsistent. *Cf. State v. Stendrup*, 983 N.W.2d 231, 240 (Iowa 2022) (distinguishing the facts from *Tyler* because the information provided to the medical examiner was not disputed). Second, the medical examiner had additional medical evidence supporting the cause-of-death determination. This evidence included: (1) finding eleven areas of hemorrhaging in the fatty tissue just underneath the child's scalp; (2) finding bruising around the child's right ear; and (3) observing bruising on the inside of the scalp that typically resulted from some sort of blunt force trauma like "a finger being pressed down on the scalp." The medical examiner considered these forensic findings to determine the child died due to suffocation. Because the medical examiner relied on more than Adams's own statements about what happened in making a cause-of-death determination, the examiner's testimony did not run afoul of *Tyler*.

Because none of Adams's various attorneys had a duty to raise the meritless argument that the medical examiner's testimony violated *Tyler*, Adams failed to establish any attorney's breach of duty to Adams. *See State v. Tompkins*,

859 N.W.2d 631, 637 (Iowa 2015).  As a result, his ineffective-assistance-of-counsel claim fails.  *See id.* (recognizing we need not proceed to the prejudice prong of a defendant cannot establish breach).  We affirm the district court's denial of Adams's PCR application.

**AFFIRMED.**